# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES DEGORSKI, ) | |
|     Plaintiff, ) | |
| ) | Case No. 04 CV 3367 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| THOMAS WILSON, et al., ) | |
|     Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Thomas Wilson's post-trial motion for remittitur altering or amending judgment pursuant to Federal Rule of Civil Procedure 59 [198, 199]. For the reasons stated below, the Court grants in part Defendant Wilson's motion and remits the punitive damages award to $150,000.00.

### I.  Background

Following a four-day jury trial, a jury entered a verdict in favor of Plaintiff and against Defendant Wilson, finding that that Defendant Wilson had violated Plaintiff's constitutional rights when he used excessive force against Plaintiff while Plaintiff was a pre-trial detainee in the Cook County Department of Corrections. The jury awarded Plaintiff $225,000 in compensatory damages and $226,000 in punitive damages. Following trial, Defendant Wilson file a motion pursuant to Rule 59(e), requesting that the Court amend the judgment and remit the punitive damages award to $0.

### II.  Analysis

Defendant Wilson, moving pursuant to Rule 59(e), contends that the punitive damages award in this case should be vacated because the award (i) is excessive under the Due Process

Clause and (ii) lacks a rational connection between the evidence and the award. In order to alter or amend a judgment under Rule 59(e), the court must find a manifest error of law or fact. *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir. 1996); *Quad/Graphics, Inc. v. One2One Communications, LLC*, 529 Fed. Appx. 784, 792 (7th Cir. 2013).

As noted, the jury awarded $226,000 in punitive damages against Defendant Wilson individually. Punitive damages are recoverable in § 1983 actions where the defendant showed a reckless or callous disregard to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 35, 51 (1983). Punitive damages are appropriate when a defendant acted wantonly and willfully or was motivated by ill-will or a desire to injure. *Hendrickson v. Cooper,* 589 F.3d 887, 894 (7th Cir. 2009) (citations and internal quotation marks omitted); *Marshall v. Teske*, 284 F.3d 765, 772 (7th Cir. 2002) ("A jury may award punitive damages in a § 1983 case if it finds that the defendants' conduct was motivated by evil intent or callous indifference to the plaintiff's federally protected rights."). Wilson argues that the Court should vacate the jury's award of punitive damages because his actions do not meet this standard, or because Plaintiff's evidence and testimony did not support an award of punitive damages.

Because the parties point to the same evidence and factors in addressing both of Defendant's arguments, the Court also concurrently addresses whether the punitive damages award offends the Due Process Clause and is supported by the evidence. In assessing whether a punitive damage award is constitutionally appropriate, the Supreme Court has directed courts to focus their evaluation on three guideposts: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the amount of the punitive damages awarded and the harm or potential harm suffered by the Plaintiff; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. See *BMW of North America, Inc.*

*v. Gore*, 517 U.S. 559, 575 (1996); see also *G.G. v. Grindle,* 665 F.3d 795, 798 (7th Cir. 2011) (in determining whether an award is reasonable, courts consider whether "(1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence * * *; and (3) whether the award is roughly comparable to awards made in similar cases").

Here, tracking the Seventh Circuit Pattern Jury Instruction, the Court instructed the jury that it may award punitive damages against a defendant "only if you find that his conduct was malicious or in reckless disregard of Plaintiff's rights." The Court defined malicious conduct as "accompanied by ill will or spite, or is done for the purpose of injuring Plaintiff" and reckless disregard as "complete indifference to Plaintiff's safety or rights." *Id.* The Court further instructed the jurors that if they determined punitive damages to be appropriate, the following factors were to be considered in assessing the amount: (1) "the reprehensibility of the particular Defendant's conduct;" (2) "the impact of the particular Defendant's conduct on Plaintiff;" (3) "the relationship between Plaintiff and particular Defendant;" (4) "the likelihood that the particular Defendant would repeat the conduct if an award of punitive damages is not made;" and (5) "the relationship of any award of punitive damages to the amount of actual harm the Plaintiff suffered."

The United States Supreme Court has held that the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct. *Gore*, 517 U.S. at 575. Evaluating reprehensibility involves inquiry into whether the injury was physical, whether it evinced a reckless disregard for the health of the target, whether the target had a financial vulnerability, and whether the injury was clearly intentional. *Kunz v. DeFelice*, 538 F. 3d 667, 679 (7th Cir. 2008) (citing *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)). Based on the evidence presented at trial, Plaintiff's injury

3

was clearly physical and evinced a reckless disregard for Plaintiff's health. Defendant Wilson punched Plaintiff repeatedly, knocking him temporarily unconscious. The blows caused Plaintiff to lose a tooth and suffer at least six separate fractures to his face that required surgery and the insertion of a metal plate in Plaintiff's cheek bone. The jury plainly concluded from the evidence that Defendant Wilson's actions not only were intentional, but clearly pre-meditated and motivated by "evil intent." Among other things, there was evidence that immediately prior to attacking Plaintiff, Wilson put on leather "shake down" gloves. A reasonable jury could have concluded that Wilson's act of putting on leather gloves revealed his intent to physically injure Plaintiff without leaving obvious injuries to Plaintiff's face in the form of cuts, abrasions, and or bruises and to protect his own hands from injury as a means of concealing his involvement in the assault.[1] On this note, the Seventh Circuit specifically has stressed that it "takes police brutality very seriously as grounds for punitive damages." *Id.* at 679 (citing *Cooper v. Casey,* 97 F.3d 914, 919 (7th Cir. 1996)). "The need to deter such behavior is plain: police brutality is a longstanding problem with which many cities are still coming to grips." *Id.* Thus, the reprehensibility of [Wilson's] conduct in his position of public trust justifies a substantial punitive damages award." *Id.*

The second guidepost is the ratio between the compensatory and punitive damages awards. There is no "simple mathematical formula" that courts must follow. See *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 (2008); *Gore,* 517 U.S. at 580–82. Instead, the *Exxon* Court acknowledged that "heavier punitive awards have been thought to be justifiable when wrongdoing is hard to detect" or "when the value of injury and the corresponding

---

[1] Also indicative of reprehensibility, evidence was introduced at trial that Wilson's attack on Plaintiff prompted a fellow correctional officer to pull Wilson off of Plaintiff and yell, "what the fuck are you doing?" Evidence also was presented that Wilson failed to report the incident or obtain necessary medical care for Plaintiff.

compensatory award are small." *Exxon*, 554 U.S. at 494. In making the latter point, the Court relied on *Gore,* which recognized that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages." 517 U.S. at 582. In this case, the jury's award of $225,000 in compensatory damages against Defendant was high for a beating of this kind; thus, there is no reason to think that the "punitive" award was disguised compensation for pain and suffering. Rather, this is a case in which the ratio between punitive and compensatory damages is almost exactly 1:1. In fact, the reasonable inference to be drawn from the jury's decision to award Plaintiff $1,000.00 more in punitive damages than the already substantial sum imposed as compensatory damages is that the jury found Defendant's conduct so reprehensible as to warrant severe punishment. Despite Defendant's arguments to the contrary, the jury's punitive damages award evinces a rational connection to the evidence and an attitude similar to that espoused by the Seventh Circuit: "the reprehensibility of [Wilson's] conduct in his position of public trust justifies a substantial punitive damages award." *Kunz*, 538 F. 3d at 679.

In deciding whether an award of punitive damages violates due process, the Court also considers "civil or criminal penalties that could be imposed for comparable misconduct" so that it may show "substantial deference to legislative judgments concerning appropriate sanctions for the conduct at issue." *E.E.O.C. v. AutoZone, Inc*., 707 F.3d 824, 840 (7th Cir. 2013). (quoting *Gore*, 517 U.S. at 583). Here, Defendant Wilson was criminally prosecuted for aggravated battery as a result of beating Plaintiff. He was found not guilty. Aggravated battery is a class three felony that carries a possible fine of $25,000.00 per offense. See 720 ILCS 5/12-3.05. He also was terminated from his employment with the Cook County Sheriff's Department. In light

5

of these circumstances, a punitive damages award of $226,000 seems excessive in comparison to a $25,000 fine, and comes on top of losing his employment. These factors counsel in favor of remittitur.

The last inquiry involves a comparison of the facts of this case with similar cases. Although "such comparisons are rarely dispositive given the fact-specific nature of damages claims," in the due process calculation "it is useful to compare the challenged punitive damages award with other awards upheld in the past." *Hendrickson v. Cooper*, 589 F.3d 887, 892-93 (7th Cir. 2009). The Seventh Circuit has noted that $125,000, an amount substantially less than the $226,000 awarded to Plaintiff, is "larger than the punitive damages awards that we have upheld in similar, though less recent, excessive force cases." *Id.* at 894 (citing *Bogan v. Stroud*, 958 F.2d 180, 182, 186 (7th Cir. 1992) ($7,000 in total punitive damages against three prison officers who beat and stabbed an inmate after subduing him); *Hagge,* 827 F.2d at 104, 110 ($25,000 against a police officer who kicked an arrestee and broke her leg); *Taliferro v. Augle,* 757 F.2d 157, 159, 162 (7th Cir. 1985) ($25,000 against two police officers who beat an arrestee)); *cf. Kunz,* 538 F.3d at 671, 679 ($90,000 in total punitive damages where multiple police officers beat an arrestee after he was subdued and, later at the station, beat out a false confession); *Marshall ex rel. Gossens v. Teske,* 284 F.3d 765, 768–69, 772–73 (7th Cir. 2002) ($100,000 against three officers who chased a minor at gunpoint, arrested him, and detained him for several hours without probable cause); *Cooper,* 97 F.3d at 916, 920 ($120,000 against seven prison guards who beat inmates and then refused requests for medical treatment). *Hendrickson* is factually very similar to the instant case. Described by the Seventh Circuit as "a rogue officer who attack[ed] a prisoner for no good reason," the jury tagged the defendant with a $125,000 punitive damages award, which the Seventh Circuit upheld. *Hendrickson*, 589 F.3d at

89. Notably, the plaintiff in *Hendrickson* was partially disabled from two car accidents, but he also was a convicted offender (as opposed to Plaintiff Degorski, who was a pre-trial detainee),[2] he insulted the officer before the beating (although after provocation by the officer), and his injuries were less serious. In upholding the punitive damages award, the Seventh Circuit noted that "$125,000 approaches the upper end of what [is] necessary to punish [the officer's] lone act of attacking a prisoner for no good reason." *Id.* at 894.

Guided by the Seventh Circuit's decision in *Hendrickson*, the Court concludes that substantial evidence of malice, serious injuries, and an almost exact 1:1 ratio between punitive and compensatory damages in this case brings a significant award of punitive damages within the bounds of reasonableness. Defendant Wilson's use of force was reprehensible because the evidence supports the jury's obvious conclusion, as reflected in its verdict, that Wilson's actions

---

[2] When law enforcement officers apply physical force to suspects, detainees, or prisoners, the constitutional standard depends on the status of the person on the receiving end. A person who is not in custody and who is a target of police force is protected by the Fourth Amendment's prohibition on unreasonable seizures of the person. The Fourth Amendment standard is objective: was the application of force unreasonable in light of all the relevant circumstances confronting the officer at the time? *Graham v. Connor,* 490 U.S. 386, 395–97 (1989). A person convicted of a crime and serving a custodial sentence is protected by the Eighth Amendment's prohibition on cruel and unusual punishment. The Eighth Amendment standard differs from the Fourth because the officer's state of mind is critical. The plaintiff must prove that the correctional officer intentionally used extreme or excessive cruelty toward the plaintiff for the purpose of harming him, and not in a good faith effort to maintain or restore security or discipline. *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986). In *Graham,* the Supreme Court explained that the less protective Eighth Amendment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." 490 U.S. at 398–99. The person in between is the pretrial detainee. That person is protected from excessive force by the Due Process Clauses of the Fifth or Fourteenth Amendments because he may not be "punished" until he has been adjudged guilty through due process of law. *Bell v. Wolfish,* 441 U.S. 520, 535 & n. 16 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977). The Seventh Circuit has recognized that pretrial detainees receive more protection than convicted prisoners (see, *e.g.*, *Lewis v. Downey,* 581 F.3d 467, 474 (7th Cir. 2009)), but "[j]ust what the excessive force standard for a pretrial detainee looks like in detail is not as clear." *Kingsley v. Hendrickson*, 744 F.3d 443, 456-57 (7th Cir. 2014). The detainee may often be held in a jail with convicted offenders under conditions that seem indistinguishable from prison, yet he has not been convicted and is still entitled to a presumption of innocence. The Supreme Court has not settled the standard for pretrial detainees. *Graham* explicitly left it open. 490 U.S. at 395 n. 10. The Seventh Circuit's case law "points in the direction of a standard identical or close to the objective Fourth Amendment standard, but there are conflicting signals * * *." *Kingsley*, 744 F.3d at 456-57.

were completely unprovoked and vicious. In *Hendrickson*, the inmate was goaded into leveling an assault at the officer before the beating; here, the jury clearly credited Plaintiff's version of the events – namely, that he did nothing prior to Wilson's assault. It was simply Plaintiff's status as a high-profile pre-trial detainee charged with a serious crime (processed at the jail on the day of the beating) that provoked Wilson to initiate a violent confrontation with Plaintiff. And the confrontation was even more violent than in *Hendrickson*, where the plaintiff was treated initially for pain all over and then for ongoing back pain. Here, Plaintiff was severely beaten, lost consciousness, and suffered several fractures to his face that required surgery.[3] Furthermore, the jury awarded punitive damages against Defendant Wilson in an almost exact 1:1 ratio to compensatory damages. The addition of the $1,000.00 in their award of punitive damages reflects the jury's "sound reasoning" in setting the amount of those damages, taking into account not only Plaintiff's physical injuries, but Defendant Wilson's offensive actions in his role as an law enforcement officer. Thus, while the Court is constrained by the Seventh Circuit's assessment in *Hendrickson* that "$125,000 approaches the upper end of what was necessary to punish [the officer's] lone act of attacking a prisoner for no good reason" and concludes that $226,000 in punitive damages for a lone act is too much, the Court concludes that an amount above $125,000 is appropriate in these unique circumstances. Therefore, the Court grants in part Defendant Wilson's request for remittitur [198, 199], but reduces the amount of punitive

---

[3] Defendant has stressed Dr. Goldin's trial testimony that a fracture of the kind suffered by Plaintiff "can even occur in sports such as boxing or basketball" and "can be caused by a single blow." Blows to the face plainly are part of the sport of boxing and the participants accordingly are poised to anticipate and defend against their adversary's strikes. Given the absence of warning or provocation evident on the record and the force with which the blows here were struck, the only accurate sports analogy that comes to mind is the infamous punch thrown by Kermit Washington of the Los Angeles Lakers that nearly killed Rudy Tomjanovich of the Houston Rockets. See generally John Feinstein, THE PUNCH: ONE NIGHT, TWO LIVES, AND THE FIGHT THAT CHANGED BASKETBALL FOREVER (2003).

damages to $150,000, as opposed to the $0 requested by Defendant.[4]

Dated:  July 16, 2014

_____
Robert M. Dow, Jr.
United States District Judge

---

[4] In view of the Illinois statute providing that, with certain relatively small exceptions, inmates must bear the costs of their own incarceration and authorizing the Department of Corrections to institute legal proceedings for reimbursement of those costs, it appears likely that Plaintiff himself will receive, at most, only a small percentage of the compensatory and punitive damages awarded. See 730 ILCS 5/3-7-6(a)-(e); *People ex rel. Illinois Dep't of Corrections v. Hawkins*, 952 N.E.2d 624 (Ill. 2011).  The families of the victims of the murders of which Plaintiff was convicted also may have a claim to some or all of the money awarded to Plaintiff.