# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAMES DEGORSKI, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-cv-3367 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| THOMAS WILSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff James Degorski's motion for attorneys' fees pursuant to 42 U.S.C. § 1988 [207]. For the reasons stated below, the Court grants Plaintiff's motion and awards Plaintiff's counsel $177,570.00 in attorneys' fees.[1]

## I.     Background

Following a four-day jury trial, a jury entered a verdict in favor of Plaintiff James Degorski and against Defendant Wilson, finding that Defendant Wilson had violated Plaintiff's constitutional rights when he used excessive force against Plaintiff while Plaintiff was a pre-trial detainee in the Cook County Department of Corrections. The jury found in favor of Defendant Koch on Plaintiff's failure to intervene claim.[2] The jury awarded Plaintiff $225,000 in compensatory damages and $226,000 in punitive damages. Following trial, Defendant Wilson filed a motion pursuant to Rule 59(e), requesting that the Court amend the judgment and remit the punitive damages award to $0. In granting in part and denying in part Defendant Wilson's motion, the Court concluded that substantial evidence of malice, serious injuries, and an almost

---

[1] Plaintiff's motion does not request, nor provide any support for, an award of costs, although Plaintiff referenced approximately $9,500 in costs in her initial demand letter.

[2] Prior to trial, Plaintiff dismissed his state law claim of battery against Officer Wilson and against Sheriff Dart pursuant to *respondeat superior*.

exact 1:1 ratio between punitive and compensatory damages in this case brought a significant award of punitive damages within the bounds of reasonableness. The Court further concluded that Defendant Wilson's use of force was reprehensible because the evidence supported the jury's obvious conclusion, as reflected in its verdict, that Wilson's actions were completely unprovoked and vicious. In this case, the jury clearly credited Plaintiff's version of the events—namely, that he did nothing prior to Wilson's assault. It was simply Plaintiff's status as a high-profile pre-trial detainee charged with a serious crime (initially processed at the jail on the day of the beating) that provoked Wilson to initiate a violent confrontation with Plaintiff. Plaintiff was severely beaten, lost consciousness, and suffered several fractures to his face that required surgery. Finally, the Court noted that the addition of the $1,000.00 in their award of punitive damages reflected the jury's "sound reasoning" in setting the amount of those damages, taking into account not only Plaintiff's physical injuries, but Defendant Wilson's offensive actions in his role as an law enforcement officer. Although the Court was constrained by Seventh Circuit case law that "$125,000 approaches the upper end of what was necessary to punish [the officer's] lone act of attacking a prisoner for no good reason" and ultimately concluded that $226,000 in punitive damages for a lone act was too much, the Court only reduced the amount of punitive damages to $150,000, as opposed to the $0 requested by Defendant. Defendants did not challenge the jury award of $225,000 in compensatory damages against Defendant Wilson.

In April 2014, Plaintiff's counsel wrote to Defendants' counsel and disclosed her estimated attorneys' fees and costs associated with litigating this matter. Plaintiff's counsel also requested that defense counsel submit an accounting of defense costs and fees so that the parties could prepare a joint fee statement pursuant to Local Rule 54.3. Plaintiff offered to forego the

entire punitive damages award in exchange for Defendant Wilson foregoing his right to appeal the judgment and agreeing to counsel's fees and costs.

On May 1, 2014, the parties held a telephonic conference in an attempt to resolve the outstanding monetary issues. The parties dispute the exact offers made, but it appears from a disagreeable e-mail exchange between Ms. Bonjean and Assistant States Attorney Michael Gallagher on May 2, 2014, that the best offer from Defendants was to (1) allow Plaintiff to retain between $25,000 of his compensatory damages award and (2) agree that the IDOC would not seek a court-ordered lien for his cost of incarceration over $10,000. Despite Defendants' representation that there was an offer to reasonably settle attorneys' fees, the attached e-mails (to which Defendants cite as support) do not reference an offer to settle attorneys' fees. Plaintiff's counsel declined Defendants' offer and reiterated Plaintiff's own best offer that if Defendant Wilson agreed to forego his appeal rights and the county agreed to pay Plaintiff's counsel's fees and costs, Plaintiff would forfeit the entire punitive damages award. Plaintiff acknowledged that numerous parties may stake claim to the remainder of Plaintiff's award of damages but Plaintiff could not agree to voluntarily forfeit nearly the entire award to the families of the victims, particularly since Plaintiff continues to pursue his appellate remedies. Both parties declined to continue negotiations. As of the filing of Plaintiff's motion for attorney fees, there is no evidence that Defendants engaged in any discussion with Plaintiff's counsel regarding fees and costs and it appears that, until the filing of their response brief, refused to tender any information about their own fees and costs.

**II.	Analysis**

    **A.	General standards**

In order to entice competent attorneys to prosecute civil rights cases, Congress enacted 42 U.S.C. § 1988, pursuant to which a "prevailing party" in a Section 1983 action is entitled to "reasonable" attorneys' fees. See *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). A civil rights plaintiff is considered to be a "prevailing party" if he or she succeeds on "any significant issue in the litigation." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989). As a result of the substantial jury verdict in this case, there can be no dispute that Plaintiff must be deemed a "prevailing party" who is entitled to an award of "reasonable" attorneys' fees.

In deciding the specific amount that is reasonable in the circumstances, the Supreme Court has directed district courts to consider as a "starting point" (or "lodestar") the number of hours expended in the litigation multiplied by a reasonable hourly rate. *Hensley*, 461 U.S. at 433. The Court has stressed that the "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained" by the prevailing party. *Id.* at 436. Courts frequently attempt to measure success by viewing three factors: (i) the difference between the actual judgment and the recovery sought, (ii) the significance of the legal issues on which the plaintiff prevailed, and (iii) the public interest at stake in the litigation. See, *e.g.*, *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999).

The Supreme Court expressly has stated that when litigation of a § 1983 case leads to "excellent results" for the prevailing party, the plaintiff's attorney "should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. As the Court further explained, "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of

exceptional success an enhanced award may be justified." *Id*. Both the Supreme Court and the Seventh Circuit have stressed that a fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; see also *Dunning v. Simmons Airlines, Inc.*, 62 F.3d 863, 873 (7th Cir. 1995). As the court of appeals summarized, "*Hensley* makes clear that when claims are interrelated, as is often the case in civil rights litigation, time spent pursuant to an unsuccessful claim may be compensable if it also contributed to the success of other claims." *Jaffee v. Redmond*, 142 F.3d 409, 413 (7th Cir. 1998).

Here, Plaintiff's claims had their genesis in a relatively brief interaction between Defendant Officers and Plaintiff. That interaction spawned ten years of litigation. The jury then awarded Plaintiff almost half of a million dollars on his excessive force claim, although it denied relief on Plaintiff's failure to intervene claim against Defendant Koch. Based on the evidence presented at trial, this case is an exemplar of the cases in which "the plaintiff's claims of relief * * * involve a common core of facts or [are] based on related legal theories," such that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). In such cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff." *Id*.; see also *Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000) (explaining that the court should focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"). Thus, due to the substantial compensatory and punitive damages verdicts against Defendant Wilson, the Court declines to divide the hours expended on a claim-by-claim basis and instead will focus on the

significance of the overall relief obtained by Plaintiff, which included a $225,000 compensatory damages award, for which Wilson's former employer owes a statutory duty to indemnify.

Plaintiff obtained an exceptional result in this litigation in no small part due to the risk taken, as well as the efforts and skill deployed, by the attorneys working on this case. Section 1983 cases comprise a specialized federal practice area, one requiring knowledge of complex constitutional issues, creative and aggressive advocacy, and superior trial practice abilities. There are a limited number of firms able or willing to commit the massive time and advance the necessary resources required to take on such cases competently, much less win them.

The fact that Defendants were unwilling to put any meaningful settlement money on the table prior to trial (and even after a judgment was entered against them) only underscores the uphill nature of the battle here. Notwithstanding the very real possibility of recovering nothing had the jury found Defendant Wilson's testimony more compelling than Plaintiff's own testimony, Plaintiff's counsel proceeded to litigate the case aggressively, investing considerable time and money. In the process, Plaintiff was provided with very capable representation by attorneys Bonjean and Smith.

Recognizing the importance of vindicating constitutional rights through the § 1983 vehicle created by Congress, it is not unusual for district courts to grant, and courts of appeals to affirm, attorneys' fees that exceed (even substantially) the amount of the judgment when doing so is reasonable in the circumstances. See, *e.g.*, *Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) (affirming $507,000 fee award on $275,000 verdict); *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000) (affirming $391,000 fee award on $137,000 verdict). But here, the total fees sought by Plaintiff's counsel are less than $200,000 (generated since Plaintiff's current counsel entered their appearances on May 22,

2012.)³  That is less than half of the $451,000 jury verdict received by Plaintiff (and still only a little more than half of the remitted total damages amount of $375,000).  The fact that Plaintiff was awarded substantially more than counsel is requesting weighs heavily in favor of approving the full lodestar amount.

Turning first to the three factors set forth by the Seventh Circuit in *Connolly*, 177 F.3d at 597, "the difference between the actual judgment and the recovery sought" indicates that Plaintiff achieved an outstanding degree of success in this litigation.  Critically, as noted above, Defendants were unwilling from the start to engage in any meaningful settlement discussions, despite the fact that the Cook County Sheriff's Department terminated Wilson after the incident underlying this lawsuit, and the State brought criminal charges against Wilson—both strong indications that Plaintiff's civil rights claims were meritorious.  The best and final offer conveyed to Plaintiff by counsel for Defendant Wilson prior to trial was $5,000.00.  At the final pretrial conference, the Court one last time encouraged Defendants to consider settlement discussions but Defendants refused to entertain the suggestion in any meaningful way.

Turning to the second and third factors, the legal issues on which Plaintiff prevailed and the public interests at stake in this litigation both were significant; in the Supreme Court's words, "the damages a plaintiff recovers contribute significantly to the deterrence of civil rights violations in the future," and particularly "in the area of individual police misconduct, where injunctive relief is generally unavailable."  *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).  There is no doubt that this case was highly undesirable.  Plaintiff was forced to represent himself through much of this litigation because few attorneys were willing to take on his unpopular

---

³  Bonjean and Smith represent that they have accumulated just under 400 hours of work on this case. That number of hours does not take into account the attorneys' fees and costs accumulated by prior counsel, who died during the course of this litigation, to which Plaintiff may be entitled. In this regard, Defendants likely are receiving a windfall that they do not appear to recognize or acknowledge.

cause, evincing the collective view among the plaintiffs' bar that the case was a difficult one on which to prevail. Indeed, Plaintiff's first attorney withdrew from the case on December 15, 2009—likely not coincidence following Plaintiff's conviction of seven counts of first degree murder. Plaintiff then made thorough yet unsuccessful efforts to find replacement counsel as evidenced by a letter written to the Court by Plaintiff on July 20, 2010. Plaintiff was finally able to secure counsel, Barbara Clinite, who filed an appearance on March 19, 2011. However, Ms. Clinite passed away roughly eight months later. Jennifer Bonjean, a practicing Illinois attorney with a principal office in Brooklyn, New York, and Christopher Smith, a Chicago civil rights attorney, agreed to represent Plaintiff on May 22, 2012. In filing their appearances, Plaintiff's counsel took on a case after their client had been convicted of heinous and notorious crimes. At the time that they agreed to represent Plaintiff, Plaintiff's counsel likely understood that any jury would learn that Plaintiff had been convicted of multiple murders.

After consideration of the pertinent factors, the Court finds that Plaintiff achieved an outstanding degree of success after a four-day trial. Because the jury's verdict (even following the Court's remittitur) constitutes an excellent result for Plaintiff (as well as an appropriate, well-reasoned result by the jury), the Court concludes that Plaintiff's attorneys should recover a "fully compensatory fee." *Hensley*, 461 U.S. at 435. The Court believes that 100% of the fees sought is warranted because Plaintiff's counsel took on a very difficult case, Defendants refused to meaningfully negotiate prior to or even after trial, and, most importantly, the evidence submitted at trial overwhelming supported the jury's conclusions as to liability. See *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010) (noting that "the district court is entitled to considerable discretion in arriving at an award that it deems reasonable," but that "the district court must justify its

decision. This explanation may be 'concise,' but it must still be an explanation—that is, a rendering of reasons in support of a judgment—rather than a mere conclusory statement.").

B.  **Cook County's Responsibility for Attorneys' Fees**

Defendants have objected to the imposition of any attorneys' fee award against Sheriff Dart and Cook County. In support of their position, Defendants note that the indemnification obligation imposed on the Sheriff and Cook County pursuant to 745 ILCS 10/9-102 does not extend to attorneys' fees, citing *Yang v. City of Chicago*, 195 Ill. 2d 96 (2001). See also 745 ILCS 10/9-102 (stating that "[a] local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article"). According to Defendants, under Illinois law, Cook County is *authorized* in its discretion to pay attorneys' fees and costs, but is not *required* to do so.

*Yang* indeed states that a "tort judgment" as contemplated by the Tort Immunity Act does not encompass attorneys' fees against municipalities within its definition of compensatory damages. *Yang*, 195 Ill. 2d 96. The Seventh Circuit likewise recently concluded that 745 ILCS 10/9-102 (governing a public entity's payment of attorney fees and costs) was permissive, not mandatory. See *Winston v. O'Brien*, --- F.3d ---, 2014 WL 5786953, at *4-5 (7th Cir. Nov. 7, 2014) ("In sum, the plain language of § 9–102 gives the City discretion in deciding to indemnify attorney's fees associated with an award of compensatory damages"). Plaintiff reasonably does not dispute this reading; instead, Plaintiff contends that the County's collective bargaining agreement with its employees explicitly states that it "shall be responsible for, hold officers harmless and pay for damages or moneys which may be adjudged, assessed, or otherwise levied

9

against any officer covered by this agreement," assuming the officer was acting within his scope of employment and cooperates with the County in defense of any suit. Thus, Plaintiff contends that the CBA requires Cook County and Sheriff Dart to indemnify Defendant Wilson for any attorneys' fees levied against him.

That may well be the case—indeed, it seems like Cook County, which is on the hook for compensatory damages, also should be on the hook for attorneys' fees should compensatory damages be levied against one of its employees[4]—but that is a question for another day and most likely another court. See *Winston*, --- F.3d ---, 2014 WL 5786953 at *5 (holding that "the CBA with the police union does not convert § 9-102 into a mandate to pay fees"). It is not entirely clear whether the parties believe this Court could decide this matter. At a recent status conference, the parties seemed to be in agreement that this issue was outside the scope of the issues presently before the Court, and no party has provided this Court with authority showing that it would have jurisdiction to resolve the issue if it were squarely presented. The § 1983 suit is the suit before this Court, and it has gone to judgment. Any dispute between Defendant Wilson and Cook County as to whether the attorneys' fees awarded against Defendant Wilson are covered by another aspect of those parties' relationship, to the extent it cannot be settled between the parties, appears to be an issue for arbitration under the terms of the CBA or for suit in state court. The only issue here is the amount of the fee award that is appropriate in this case.

### C. Hours Reasonably Expended

The remaining question is what hours were "reasonably expended" in this case? In their response brief, Defendants raise a number of general objections to Plaintiff's hours and rate. In essence, Plaintiff contends that Defendants waived these objections by failing to provide their

---

[4] If that were not the case, the incentive for lawyers to take on these kinds of cases would decrease significantly.

specific objections prior to the filing of Plaintiff's motion as required by Local Rule 54.3. Local Rule 54.3(d) contemplates that parties will state their objections with clarity and particularity to facilitate resolution of fee disputes, where possible, without court intervention. See, *e.g.*, *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 664 (7th Cir. 1985) (noting that the party opposing a fee petition must "state objections with particularity and clarity"). On April 2, 2014, Plaintiff tendered to defense counsel a letter setting forth counsel's billing rates, an estimate of the hours expended, arguments in support of the fee petition, and other supporting materials. The local rule provides the opposing party with 21 days to respond, which, in this case, would have been before the end of April. Rather than respond with a simple estimate of defense counsel's hours and rates, defense counsel (who had filed appearances in this matter and represented Defendants through trial and post-trial motions) claimed that they had no authority to negotiate attorneys' fees and costs, refused to estimate their hours spent on the case, and ignored Plaintiff's counsel's express request that the parties swap information pursuant to local rules.

Plaintiff's counsel later learned that Michael Gallagher, a Cook County State's Attorney who had not filed an appearance in the case, had decision-making authority with respect to negotiating an agreement on fees and costs. Nevertheless, there is no indication on the record of a timely response from Defendants that included an estimate of defense counsel's hours; the first communication as to those hours that the Court has seen occurs in the written response to Plaintiff's motion that was filed in late September. As detailed above, months earlier (in May) the parties engaged in brief, unsuccessful settlement discussions. Defendants have not pointed to any written submissions contemporaneous with those discussions confirming that they gave Plaintiff any estimates of their hours or billing rates or any documentation demonstrating that

they made a reasonable offer to Plaintiff to settle the fee dispute. Plaintiff then filed the instant petition.

Local Rule 54.3 sets forth a process that, when done properly, aids the Court in the fair disposition of petitions for attorneys' fees. Although Plaintiff's initial letter to Defendants was in the vein of an estimate, it was fairly detailed and included both an estimate of hours and a notice of her billing rates, as well as reasons why counsel believed her estimates to be reasonable. It also included a specific request that Defendants "[k]indly provide Plaintiff's counsel with an accounting of all of Defendants' attorneys fees and cost." Defendants then refused to engage in the process by refusing to turn over an estimate of their hours and rates or a written response to her statement of reasons. This response precluded meaningful resolution of the issues, despite representations to the Court that the parties were working toward settlement of these issues. In view of Defendants' lack of timely compliance with the Local Rule's directives, the Court concludes that Defendants have waived their specific objections to Plaintiff's fee entries.

In any event, the Court has reviewed Plaintiff's hours and billing rate and finds both to be reasonable given counsel's two-and-a-half-year representation of Plaintiff, culminating in a four-day trial at which Plaintiff bore the burden of proof and post-trial motions. Attorney Bonjean reports a total of 289.6 hours while Smith reports 105 hours. Together, Bonjean and Smith spent a total of 394.6 hours of work. This is approximately 25 hours less than Plaintiff's original estimate. The billing records reflect work necessary to the preparation of a four-day jury trial as well as hours reasonably expected to be expended during a trial. These totals also account for

counsel's post-trial efforts, in which they had to respond to Defendant Wilson's post-trial motion as well as issues pertaining to the fee dispute.[5]

Plaintiff's two lawyers seek to be compensated at a rate of $495 per hour. Attorney Jennifer Bonjean has 15 years of legal experience and Attorney Christopher Smith has 24 years of legal experience. Bonjean founded her law firm in 2007, specializing in civil rights and criminal defense litigation. She handles civil rights litigation in the United States District Court for the Northern District of Illinois, the Southern and Eastern Districts of New York, and the District of New Jersey. Bonjean has extensive trial and appellate practice experience in the federal and state courts of New York, New Jersey, and Illinois. Similarly, Christopher Smith has 24 years of experience, much of it relevant to the issues presented in this case. Attorney Smith recently filed a supplemental affidavit indicating that earlier this year a court approved without objection a $450 hourly rate for Mr. Smith's work in § 1983 litigation.

The Court's review of the case law in this district suggests that rates at or above $450 per hour sit at the upper end of the spectrum for § 1983 cases.[6] To be sure, there are a few cases approving fees above that level. See, *e.g., Fox ex rel. Fox v. Barnes*, 2013 WL 4401802, at *4 (N.D. Ill. Aug. 15, 2013) (approving rates of $495 and $505 for experienced civil rights litigators). The Court finds that the $450 hourly rate approved earlier this year for Attorney

---

[5] In their response brief, Defendants report that counsel representing Defendants Koch and Dart accumulated 368.1 hours on this case, while counsel for Defendant Wilson totaled 171.6 hours.

[6] Plaintiff urged the Court to rely on the Laffey matrix in assessing the reasonableness of the requested rates. The Laffey matrix is a table of hourly rates prepared by the United States Attorney's Office in the District of Columbia for attorneys in the Washington, D.C. area. The Seventh Circuit has not explicitly endorsed the use of the Laffey matrix, and in fact has questioned its application (see *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 649-50 (7th Cir. 2011)), but courts in this district have accepted it as evidence of a reasonable hourly rate. See *Hadnott v. City of Chicago,* 2010 WL 1499473, at *7 (N.D. Ill. Apr.12, 2010) (Schenkier, M.J.) (citing cases and concluding "that the Laffey Matrix is 'satisfactory evidence' of the prevailing rate, so that the burden shifts to opposing counsel to show why a lower rate is essential"). In this case, the Court has looked to comparable civil rights cases in this circuit rather than relying on the Laffey matrix.

Smith is appropriate for both of Plaintiff's experienced counsel in this case. Attorney Smith has almost a decade more experience than Attorney Bonjean, but rates for lawyers in New York and New Jersey are, on average, higher than rates for lawyers in Chicago, so no differential between the two is warranted. The Court further finds that the requested hourly fees are appropriate to compensate Plaintiff's lawyers for their very capable representation and the excellent result that they obtained for their client in this challenging case.

* * * * *

In sum, because Plaintiff won a substantial verdict in this civil rights action, Plaintiff clearly qualifies as a prevailing party entitled to attorneys' fees under § 1988. In consideration of the applicable factors, the Court concludes that Plaintiff obtained an excellent result and should recover "a fully compensatory fee." In other words, for the reasons set forth above, the Court concludes that Plaintiff is entitled to 100% of the traditional lodestar—reasonable hours multiplied by counsel's reasonable hourly rates. Finally, as explained in detail above, the Court finds that Defendants have waived the specific objections to Plaintiff's entries in view of their failure to comply with the spirit and letter of Local Rule 54.3 as they neither provided estimates of their hours and rates on a timely basis nor engaged in meaningful discussion about Plaintiff's request for attorneys' fees.

### III. Conclusion

For these reasons, the Court grants Plaintiff's petition for attorneys' fees [207] and awards Plaintiff $177,570.00 (394.6 hours of work multiplied by $450.00/hour) in fees.

Dated: November 26, 2014  _____
Robert M. Dow, Jr.
United States District Judge